IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:99-cr-027 |
| v. | : | |
| | : | Judge Susan J. Dlott |
| Gene D. Moses, | : | |
| | : | Order Denying Motion for |
| Defendant. | : | Compassionate Release |

This matter is before the Court on the Defendant Gene Moses's *pro se* Motion for Modification of an Imposed Term of Imprisonment Due to Extraordinary and Compelling Reasons ("Motion for Compassionate Release") (Doc. 35) and the Supplement (Doc. 43) filed by his appointed counsel. He seeks compassionate release from incarceration pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government has filed a Response (Doc. 44) in opposition to Moses's request for compassionate release. For the reasons that follow, the Court will **DENY** Moses's Motion for Compassionate Release.

I.    BACKGROUND

Moses pleaded guilty in April 1999 to an Information charging him with two counts of armed bank robbery in violation of 18 U.S.C. § 2113(a). Moses did not object to the Presentence Investigation Report ("PSI Report") at his sentencing in May 1999. (Doc. 12.) The Honorable Judge Sandra S. Beckwith determined that Moses was a career offender under the Sentencing Guidelines based on a 1975 conviction for robbery, a 1977 conviction for second-degree murder, and a 1987 conviction for armed bank robbery. *United States v. Moses*, No. 99-3668, 2000 WL 331951, at *2 (6th Cir. Mar. 2000). She sentenced Moses to a 235-month term of imprisonment

on each count to run concurrently, followed by a 5-year term of supervised release on each count to run concurrently, plus restitution and a special assessment. (Doc. 12.)

One set of facts regarding Moses's prior convictions is particularly relevant. In July 1987, Moses was sentenced to a 20-year term of imprisonment in the Eastern District of Kentucky for armed bank robbery. (PSI Report at 10.) He was released early from that term of imprisonment in 1993, but the United States Parole Commission issued an arrest warrant for Moses in 1994 for violating the terms of his parole. Moses was remanded to federal custody. (*Id.* at 11.) That pattern repeated itself when Moses was again released on parole in 1995, violated the terms of his parole, was arrested and reincarcerated in 1996. (*Id.*) Finally, he was released a third time and placed on parole in November 1997. The United States Parole Commission issued a warrant for his arrest for parole violations in June 1998. He was arrested for this third set of parole violations, and for the armed bank robberies underlying his convictions in this case, in November 1998. (*Id.*)

Moses completed the 235-month term of imprisonment imposed by Judge Beckwith in this case in 2015. (Doc. 43 at PageID 94–95.) However, the United States Parole Commission determined that he should serve out the remainder of his term of imprisonment from the 1987 armed bank robbery because he committed the Ohio armed bank robberies while on parole for that earlier crime. (*Id.*) Moses currently is incarcerated at FCI Ashland and his estimated date of release is September 23, 2021. Federal BOP, *Find an Inmate*: https://www.bop.gov/inmateloc/ (last viewed 12/15/2020).

Moses requests in his Motion for Compassionate Release and Supplement that this Court reduce his already-completed sentence by approximately 10 months. He contends that will have the effect of adjusting the time from which he began to serve on the parole violation, resulting in

his eligibility for immediate release. The Government opposes his request for compassionate release.

## II. STANDARD OF LAW

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008). The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). A defendant seeking sentence reduction bears the burden of proving entitlement to compassionate release. *Id.* at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

Exhaustion of administrative remedies is a mandatory claim-processing rule. *U.S. v.*

3

*Alam*, 960 F.3d 831, 833–834 (6th Cir. 2020). Assuming that the inmate has satisfied administrative remedies, the district court must engage in the § 2852(c)(1)(A) analysis as follows: (1) the court must find that "extraordinary and compelling reasons" warrant a reduction; (2) the court must find that a reduction is consistent with applicable policy statements issued by the sentencing commission; and (3) the court must consider the relevant sentencing factors listed in § 3553(a). The Sixth Circuit has clarified that the district court must make the two requisite findings before weighing the § 3553 factors. *United States v. Jones*, 980 F.3d 1098, 1101, 1106 (6th Cir. 2020). However, as to the second prong, the First Step Act rendered the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S. G. § 1B1.13—inapplicable to cases filed by federal inmates. *Id.* at 1109, 1111. This means in practical terms that the district court has full discretion to define extraordinary and compelling reasons without reference to the policy statement in § 1B1.13. *Id.* at 1111.

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a). These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

**III. ANALYSIS**

The Government first objects that the Court lacks jurisdiction to grant compassionate release because Moses has completed his term of incarceration from the convictions in this case. A § 3582(c) motion is a criminal motion and is "part of the defendant's criminal proceeding." *United States v. Brown*, 817 F.3d 486, 488–489 (6th Cir. 2016) (citation omitted). The Government asserts that this criminal proceeding is completed. Moses currently is serving out the term of imprisonment first imposed by the Eastern District of Kentucky for the 1987 Kentucky bank robbery pursuant to an order of the U.S. Parole Commission.

Moses responds that the Court can reduce the length of the term of imprisonment that Moses already has served. He contends that a 10-month reduction in his sentence from this case would have the effect of moving back the calculation of his parole sanction and make him eligible for immediate release. Moses correctly points out that nothing in the text of § 3582(c) imposes a limitation that a sentence reduction can be granted only for sentences currently being served. *Cf. United States v. Mazzini*, No. 95-CR-000538-MV, 2020 WL 2467900, at *5 (D.N.M. May 13, 2020) (stating that there was "nothing in the text of the First Step Act to suggest that the sentence reductions it authorizes apply only to sentences currently being served"). Because the issue is not dispositive, the Court will assume without deciding that it has authority to reduce Moses's completed term of incarceration pursuant to § 3582(c).[1]

The Court turns then to the § 3582(c) analysis. It is undisputed that Moses exhausted his administrative remedies before filing this lawsuit. Moses seeks compassionate release on the grounds that he is at greater risk for severe complications from COVID-19 due to his age of 66 and his medical conditions including Hepatitis-C, chronic obstructive pulmonary disease

5

("COPD"), asthma, and bronchitis. He asserts that his greater risk is the extraordinary and compelling reason for an early release under § 3582(c)(1)(A)(i).

COVID-19 is caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) and was recognized as a pandemic in March 2020. The CDC reports that as an individual gets older, the risk for severe illness from COVID-19 increases. CDC, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last viewed 12/16/2020). The CDC recognizes that adults with COPD "are at increased risk for severe illness from the virus that causes COVID-19[,]" while adults with moderate-to-severe asthma "might be at an increased risk for severe illness from the virus that causes COVID-19." CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed 12/16/2020). Hepatitis-C and bronchitis are not on the CDC's list of medical conditions that cause or might cause an increased risk for severe illness. Regarding hepatitis-C, the CDC has stated that it does not know if it causes an increased risk for severe illness from COVID-19. CDC, *What to Know About Liver Disease and COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last viewed 12/16/2020).

Moses has submitted medical records to support his assertions that he suffers from COPD and asthma. According to the 1999 PSI Report, Moses had been diagnosed with asthma, but it was not severe enough at that time to require him to take medications, use an inhaler, or require medical treatment. (PSI Report at 14.) His BOP medical records contain indications that he reported having a history of asthma and COPD to the medical staff. (Doc. 35-1 at PageID 58, 69.) In October 2009, Moses complained about mild wheezing, but he reported that he had not used an inhaler in years and he denied having chest pain or shortness of breath. (*Id.* at PageID

6

69–71.) An inhaler was ordered for him to use as needed for a cough or wheezing. (*Id.* at PageID 71.) A chest x-ray was taken which revealed "[m]arked hyperinflation consistent with COPD." (*Id.* at PageID 74.) He complained of mild wheezing again one time in 2018. (*Id.* at PageID 58.) There is no indication that Moses has required further monitoring or treatment for COPD or asthma during his incarceration.

The Court will not on the record before it find that Moses's age or medical conditions constitute extraordinary or compelling reasons for his early release under § 3582(C)(1)(a)(i). Moses has not established that he has moderate-to-severe asthma. Though there are indications that he might suffer from COPD, he has not provided a definitive diagnosis nor proof that he ever received treatment for COPD. Moses has not asserted that the he is under medical duress currently or that the medical staff at FCI Ashland has or will in the future render him inadequate medical care.

Finally, Moses has not established that he is a greater risk from COVID-19 complications at FCI Ashland than he would be if he was granted compassionate release. As to Moses's risk of contracting COVID-19, the BOP reports that there are currently 62 inmates and 23 staff who have tested positive at FCI Ashland. BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last viewed 12/16/2020). It further reports that 269 inmates and 19 staff have recovered from COVID. *Id.* There have been four inmate deaths. *Id.* These numbers are alarmingly high, but not shocking given the rise in COVID-19 cases, hospitalizations, and deaths in the general population since the start of November. *See* Ohio Department of Health, *COVID-19 Dashboard*, https://coronavirus.ohio.gov/wps/portal/gov/covid-19/dashboards/overview (last viewed 12/16/2020). Moses stated he would request being placed in a halfway house in Columbus, Ohio if released. (Doc. 35 at PageID 45–46.) He has not established that living in such a community

setting would reduce his risk of catching the virus.[2] He also has not specified how he would secure health care services upon his release.

Moreover, Moses is not a good candidate for a reduction in sentence when the § 3553(a) factors are considered. The nature and circumstances of Moses's offense strongly weigh against a reduction in his sentence. Moses repeatedly violated the conditions of parole and committed the armed robberies for which Judge Beckwith sentenced him when he was out on parole for the 1987 armed bank robbery. Moses not only carried a firearm during both robberies, but he directly threatened bank employees by pointing the weapon at their heads and chests. (PSI at 3–4.)

Moses's history and characteristics likewise do not support his request. The Court acknowledges that Moses has completed educational courses and work assignments while incarcerated, and that he is housed at a low security prison. (Doc. 35-1 at PageID 52.) His advancing age ordinarily would indicate that he is at less risk for recidivism. *See United States v. Taylor*, 800 F.3d 701, 716 (6th Cir. 2015) (acknowledging statistical evidence that recidivism rates decline with advancing age). However, these facts are counterbalanced by the extent and nature of Moses's criminal history. He was sentenced as a career offender, and his prior criminal history includes a conviction for second-degree murder and armed robbery. The murder conviction in 1977 was based on Moses being one of four young men who fatally assaulted a victim with a 2 x 4. (PSI at 10.) Moses did not accept responsibility for this crime, but he was convicted by a jury. (*Id.*) Ten years later, Moses pointed a sawed-off rifle at a bank teller during an armed robbery in Kentucky. (*Id.* at 11.) As stated above, Moses did not comply with his parole conditions when he was granted early releases from his 1987 conviction. Instead, he

---

[2] Moses also has not established that he would be able to quarantine himself for fourteen days at a halfway house as would be necessary to prevent the risk of infection to other residents.

committed two more armed robberies. The facts weigh heavily against granting a reduction in sentence.

Relatedly, Moses proposes to apply to live in a residential re-entry center/halfway house in Columbus, Ohio if he is released. He has not established where he would live after he transitioned out of the halfway house, nor how he would support himself financially. He suggests he would rely on social security benefits and Medicare/Medicaid at least until the pandemic ends, after which time he would try to find employment in plumbing or another trade. He states that he is not in contact with his family and has no children. (Doc. 35 at PageID 43.) Moses's lack of a specific living plan and lack of support network can only increase his risk of recidivism. Because of his history of violent crimes and because he lacks a viable release plan, denying the request for a sentence reduction serves the interest of protecting the public from further crimes.

Turning to sentence imposed, Judge Beckwith sentenced Moses to a term of incarceration of 235 months, the highest sentence she could impose. Her sentence followed the recommendation of the probation officer who prepared the Presentence Investigation Report. (PSI Addendum.) The sentence imposed by Judge Beckwith was within the Sentencing Guidelines range, and it matched the seriousness of the crime. The U.S. Parole Commission determined that Moses should be required to complete the term of his prior sentence to account for his parole violations. This Court will not disturb its finding by reducing his sentence in this case.

For all of these reasons, the Court concludes that Moses is not entitled to a reduction in sentence pursuant to § 3582(c).

## IV. CONCLUSION

Moses's Motion for Compassionate Release (Doc. 35) and the Supplement (Doc. 43) are **DENIED**.

. **IT IS SO ORDERED.**

Dated this 17th day of December, 2020.

                                    BY THE COURT:

                                    S/Susan J. Dlott
                                    Susan J. Dlott
                                    United States District Judge